UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,     Plaintiff,

v.     Criminal Action No. 3:25-cr-44-DJH

DALONTA CRUDUP,     Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendant Dalonta Crudup is charged with possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Docket No. 1) Crudup moves to dismiss the indictment, arguing that § 922(g)(1) is unconstitutional under the Second Amendment as applied to him. (D.N. 22) Specifically, Crudup argues that he is neither "dangerous" nor part of a "class of individuals—convicted felons"—who should be "presumptively disarmed" and that he thus should not be prohibited from possessing firearms. (*Id.*, PageID.67) The government opposes Crudup's motion. (D.N. 24) After careful consideration, the Court will deny the motion to dismiss for the reasons explained below.

**I.**

As established during Crudup's detention hearing, Crudup was arrested in February 2024 after attending a Louisville gun show where he "purchas[ed] . . . three firearms"; the group he was with had fifteen firearms in total. (D.N. 26, PageID.127, 131) At the time of the alleged offense, Crudup was on felony pretrial diversion in Hardin County Circuit Court and on probation in Washington, D.C.—both for firearm offenses. (*Id.*, PageID.128–31) Crudup was not permitted to "have access to a firearm, handgun, or any other deadly weapon" while completing pretrial diversion for the Hardin County case. (D.N. 23-1, PageID.80 ¶ 12) During the detention hearing,

1

Crudup's counsel pointed out that at the time of his arrest in the Hardin County case, Crudup "was not a convicted felon and actually had a license to carry a firearm" and that the offense in that case was carrying a "firearm with a controlled substance" (marijuana). (D.N. 26, PageID.130) Defense counsel further stated that the Hardin County offense involved "criminal possession of a forged instrument" and that the Washington, D.C. offense involved "carrying a pistol without a license." (*Id.*, PageID.132) The Magistrate Judge ordered that Crudup be detained pending trial. (D.N. 14) The Court denied Crudup's motion to revoke the detention order, finding by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community if Crudup were released. (D.N. 37)

In his motion to dismiss, Crudup argues that because he was on pretrial diversion during the alleged offense, he was not a convicted felon and thus "does not fall within the category of presumptively dangerous individuals based upon [the] nation's tradition of firearm regulation." (D.N. 22, PageID.69) In the alternative, Crudup contends that if the Court finds him to be part of a presumptively dangerous group, the presumption can be overcome because "possessing marijuana while possessing a firearm is not a presumptively dangerous offense," and "possession of a gun without a license is not a crime . . . that inherently poses a significant threat of danger." (*Id.*, PageID.74) The government maintains that "Crudup's prior criminal history and convictions show he is within the group of dangerous people Congress may disarm consistent with the Second Amendment regardless of his being ordered to complete diversion for his felony conviction." (D.N. 24, PageID.90)

II.

A.   **The Second Amendment**

The Second Amendment protects an individual's right to possess a firearm for lawful purposes, such as self-defense. *See District of Columbia v. Heller*, 554 U.S. 570, 579–81 (2008). This right extends to convicted felons. *United States v. Williams*, 113 F.4th 637, 649 (6th Cir. 2024) (holding that § 922(g)(1) was constitutional as applied to a felon with prior convictions for aggravated robbery and attempted murder). Felons' "status may justify 'limitations on individual rights,'" however. *United States v. Gore*, 118 F.4th 808, 814 (6th Cir. 2024) (quoting *United States v. Perez-Garcia*, 96 F.4th 1166, 1180 (9th Cir. 2024) (emphasis omitted)); *see also Heller*, 554 U.S. at 626 (noting that "the right secured by the Second Amendment is not unlimited" and cautioning that the opinion should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"). Such limitations, including § 922(g)(1), are "presumptively lawful." *United States v. Rahimi*, 602 U.S. 680, 699 (2024) (quoting *Heller*, 554 U.S. at 627 n.26). Under the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), however, the government must demonstrate that regulation of conduct protected by the Second Amendment is "consistent with this [n]ation's historical tradition of firearm regulation." *Id.* at 17. Modern firearm regulations need not have a "historical twin" to be constitutional. *Rahimi*, 602 U.S. at 692 (emphasis omitted) (quoting *Bruen*, 597 U.S. at 30). Rather, a modern regulation must be "consistent with the principles that underpin [the nation's] regulatory tradition." *Id.* (citing *Bruen*, 597 U.S. at 26–31).

The Sixth Circuit has held § 922(g)(1) to be "constitutional on its face and as applied to dangerous people." *Williams*, 113 F.4th at 662–63. The *Williams* panel, through a detailed historical analysis, concluded that the "nation's historical tradition confirms *Heller*'s assumption

3

that felon-in-possession laws are 'presumptively lawful.'" *Id.* at 663; *see id.* at 650–57. Thus, "legislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous[,] so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is not dangerous." *Id.* at 663. Crudup attempts to make such a showing here, maintaining that § 922(g)(1) is unconstitutional as applied to him. (D.N. 22, PageID.67; *see id.*, PageID.71–75) The Court will therefore consider the "very specific facts" of Crudup's case to determine whether he may lawfully be disarmed. *United States v. Goins*, 118 F.4th 794, 797 (6th Cir. 2024).

**B.    Dangerousness**

Although he argues otherwise (*see* D.N. 22, PageID.69–71), Crudup is part of a presumptively dangerous group: convicted felons. *Williams*, 113 F.4th at 663. Under Kentucky law, a defendant must "enter an Alford plea or a plea of guilty as a condition of pretrial diversion." Ky. Rev. Stat. Ann. § 533.250(1)(f) (West 2025). Upon entry of a guilty plea, the defendant's "status as a 'convicted felon' [is] established." *Thomas v. Commonwealth*, 95 S.W.3d 828, 829 (Ky. 2003). But "[i]f the defendant successfully completes the provisions of the pretrial diversion agreement, the charges against the defendant shall be listed as 'dismissed-diverted' and shall not constitute a criminal conviction." Ky. Rev. Stat. Ann. § 533.258(1) (West 2025). In other words, a defendant who undertakes pretrial diversion "ha[s] the potential to have his status as a 'convicted felon' changed at some point in the future," provided that he completes the diversion program. *Thomas*, 95 S.W.3d at 830. Here, Crudup pleaded guilty to the Hardin County offense in June 2022 (*see* D.N. 26, PageID.130), and it is undisputed that he never completed the diversion program (*id.*, PageID.131). He was thus a convicted felon at the time of the offense charged in

4

this case.¹ *See Thomas*, 95 S.W.3d at 830 (explaining that the appellant's "convicted felon status would remain from the date of [his] guilty plea . . . until such time, if ever, that he would successfully complete" the diversion program).

Crudup may nevertheless attempt "to demonstrate that he is not dangerous, and thus falls outside of § 922(g)(1)'s constitutionally permissible scope." *Williams*, 113 F.4th at 657. In deciding whether he has met this burden, the Court considers Crudup's "entire criminal record," *id.*, "not just the specific felony underlying his § 922(g)(1) conviction." *Id.* at 659–60. The Court may also consider "judicially noticeable information,"² *id.* at 660, as well as any violations of parole, probation, or supervised release. *See Goins*, 118 F.4th at 801–02 ("[O]ur nation's historical tradition of forfeiture laws, which temporarily disarmed convicts while they completed their sentences, also supports disarming those on parole, probation, or supervised release.").³ "Congress may lawfully disarm probationers . . . who (1) are under a firearm possession limitation as a condition of probation, (2) are under a relatively short probation sentence for a dangerous crime, and (3) whose repeated and recent actions show a likelihood of future dangerous conduct." *Id.* at 798.

---

¹ At the detention hearing, defense counsel noted that Crudup's "diversion was revoked as a part of picking up the [present] case." (D.N. 26, PageID.131)

² Judicially noticeable information is information "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). One example of judicially noticeable information is prior convictions. *See Williams*, 113 F.4th at 660. Also available here, submitted by the government, is a police report detailing the circumstances of the present offense. (D.N. 24-1) Courts within the Sixth Circuit remain split over whether police reports are judicially noticeable. *See United States v. O'Bannon*, No. 3:24-cr-62-BJB, 2025 WL 1039141, at *3 n.4 (W.D. Ky. Apr. 7, 2025) (collecting cases). The police report is unnecessary to the dangerousness determination in this case because *Williams* and *Goins* provide sufficient guidance regarding Crudup's criminal record.

³ Crudup contends that because pretrial diversion programs are "of recent origin," they do not fall under a historical tradition of firearm regulation. (D.N. 22, PageID.69; *see id.*, PageID.69–71) This argument is futile, however, because Crudup is no longer a "diversionary defendant[]" due to his failure to complete the program. (*Id.*, PageID.69; *see also* D.N. 26, PageID.131)

"[C]ertain categories of past convictions are highly probative of dangerousness, while others are less so." *Williams*, 113 F.4th at 658.  The *Williams* panel identified three categories of crimes to guide the dangerousness inquiry: (1) "crime[s] 'against the body of another human being,'" such as "murder, rape, assault, [or] robbery"; (2) "crime[s] that inherently pose[] a significant threat of danger," such as "drug trafficking [or] burglary"; and (3) "crimes that pose no threat of physical danger," such as "mail fraud, tax fraud, or making false statements." *Id.* at 663. A defendant with a conviction in either of the first two categories "will have a very difficult time, to say the least, of showing he is not dangerous." *Id.*  Crimes in the third category, however, generally will not support a finding of dangerousness. *See id.* at 659.  The Court "need not find a 'categorical' match to a specific common-law crime to show that a person is dangerous." *Id.* at 663.

Crudup argues that he "has no prior convictions for the first or second category of dangerous crimes enumerated under *Williams*" but rather only convictions for crimes that "fall within the third category . . . that cause no physical harm to another or the community." (D.N. 22, PageID.72)  Citing *United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024), Crudup first contends that his "conviction for possessing marijuana while possessing a firearm is not a presumptively dangerous offense" because marijuana users "are not presumptively dangerous people." (D.N. 22, PageID.73–74)   But *Connelly*—which is not binding on this Court—concerned 18 U.S.C. § 922(d)(3) and (g)(3), which respectively prohibit providing firearms or ammunition to an unlawful user of a controlled substance and possessing firearms or ammunition as an unlawful user of a controlled substance. *See* 117 F.4th at 272.  Those statutory provisions are not at issue here, and under Sixth Circuit caselaw, possession of a gun with a controlled substance supports a finding of dangerousness for purposes of § 922(g)(1).  *See United States v. White*, No. 24-2064, 2025

6

WL 2060869, at *3 (6th Cir. July 23, 2025) (finding the defendant dangerous based in part on his possession of a loaded firearm with "several bags of marijuana" (citing *Smith v. United States*, 508 U.S. 223, 240 (1993))).

Crudup further contends that his criminal record does not reflect "repeated and recent actions [that] show a likelihood of future dangerous conduct," *Goins*, 118 F.4th at 798, because his two prior firearm offenses were "not violent." (D.N. 22, PageID.74; *see also id.* ("Mere possession of a gun is not a violent crime.")) But *Goins* and *Williams* make clear that nonviolent offenses can support a finding of dangerousness. *See Goins*, 118 F.4th at 804 (finding the defendant dangerous based on his history of driving under the influence, public intoxication, and driving on a suspended license in addition to possessing a firearm in violation of probation); *id.* at 805 (Bush, J., concurring) (noting that Goins "ha[d] no history of violence through firearm misuse"); *Williams*, 113 F.4th at 659 ("[The] second category of crimes, while not strictly crimes against the person, may nonetheless pose a significant threat of danger."); *see also White*, 2025 WL 2060869, at *4 n.7 (rejecting the defendant's argument "that none of his prior convictions were violent" and observing that "[s]ince [*Williams*], [the Sixth Circuit] has repeatedly found that non-violent crimes are dangerous when they put the public's safety at risk" (collecting cases)). Certain crimes are indicative of dangerousness even if they "do not always involve an immediate and direct threat of violence." *Williams*, 113 F.4th at 659. Unlawful possession of a firearm is one example. *See id.* at 662; *White*, 2025 WL 2060869, at *3 (finding that three instances of illegally possessing a gun indicated dangerousness). Here, as in *Goins*, Crudup's "prior convictions for the same dangerous conduct"—unlawful possession of a firearm—"evince a

likelihood of future dangerous conduct."[4] 118 F.4th at 804. "Moreover, and most importantly, at the time [Crudup allegedly] possessed the firearm[s]" at issue in this case, "he was in violation of . . . condition[s] of" the Hardin County pretrial diversion. *Id.*; *see United States v. Taylor*, No. 23-5644, 2024 WL 4891756, at *1–2 (6th Cir. Nov. 25, 2024) (per curiam) (rejecting the defendant's as-applied challenge to § 922(g)(1) without analysis because "like the defendant in *Goins*, Taylor was also on probation when he possessed firearms in violation of § 922(g)(1)").

### III.

As set forth above, Crudup has not carried his burden to show that § 922(g)(1) violates the Second Amendment as applied to him. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Crudup's motion to dismiss the indictment (D.N. 22) is **DENIED**.

November 12, 2025

*David J. Hale, Judge*
*United States District Court*

---

[4] At the detention hearing, the government asserted that Crudup "has a number of firearm-related arrests that didn't end up in convictions . . . [in addition to the] two convictions . . . that involve firearms." (D.N. 26, PageID.128)